11773

YORK v. CHARLES ·

(128 S. E., 29)

1. HIGHWAYS—EVIDENCE SUFFICIENT TO GO TO JURY IN ACTION FOR DAMAGES TO AUTOMOBILE FROM COLLISION.—In action for damages to automobile from collision on bridge too narrow for two cars to pass, evidence *held* sufficient to go to jury, and to warrant denial of plaintiff's motion for directed verdict.

2. APPEAL AND ERROR—EXCLUSION OF EVIDENCE SUBSEQUENTLY RECEIVED NOT REVERSIBLE ERROR.—Exclusion of evidence is not reversible error, where such evidence is later given without objection· or without request for ruling on objection made.

3. EVIDENCE—STATEMENTS MADE JUST AFTER AUTOMOBILE COLLISION HELD PART OF RES GESTAE AND ADMISSIBLE.—In action for damages to automobile from collision, testimony as to statements made to defendant by third person, who saw cars just after collision, *held* part of *res gestae* and admissible.

Before ANSEL, J., Greenville, April, 1924. Affirmed.

Action by E. C. York against Mrs. Eileen Hunt Charles. From judgment for defendant, plaintiff appeals.

The following are defendant's exceptions II, III, IV:

II. Because his Honor erred in not holding that the refusal of testimony of plaintiff's witness, Sizemore, who had been in the car of plaintiff from Greenville to Conestee and from Conestee to a point four miles this side of Greenville, to be prejudicial to the plaintiff, in that he was not allowed to answer the following questions asked by plaintiff's counsel:

"Q. State whether or not the conduct of the driver was one of a careful driver?

"Mr. Oxner objects.

"Court: He can state what was done and let the jury draw its conclusions.

"Q. State what was done by Mr. Pruitt when you were coming down, approaching the bridge? A. I don't remember anything out of the ordinary at all.

"Mr. Leach: I have the right to ask whether the driver's conduct was that of a careful or careless driver.

"Court: He can only state what was done, and let the jury draw its own opinion."

It being submitted that the ruling of the Court was in plain violation of the rule of evidence, and, therefore, prejudicial to the plaintiff.

III. Because his Honor erred in holding admissible as part of the *res gestae* the following testimony of the defendant, Mrs. Charles:

"* * * One man, Mr. S. ———, from Ohio, walked to my car and asked who I was and where I was going and if he could be of any assistance."

"Q. Did York's driver hear the conversation? A. He could have.

"Q. He said he would go and get my husband if I would tell him where Conestee was. I gave him instructions, and he said: 'It is clearly the other man's fault.'

"Q. Could the other man hear it? A. They were standing there.

"Mr. Leach objects.

"The Court: This is a part of the *res gestae*.

"Q. Who did he say he was? A. He was a traveling man.

"Q. What did he say about whose fault it was? A. It seemed to be clearly these men's fault; said he drove up before the cars were off the bridge.

"Mr. Leach objects.

"Court: Competent as part of the *res gestae*. Note Mr. Leach's objection.

A. He said: 'I think you had better stay here.'

"Q. All I want to know is what he said about whose fault it was. A. He said clearly those men's fault."

It being respectfully submitted that the statement made to defendant by the traveling man from Ohio was merely his opinion, and when repeated by defendant was plain, incompetent hearsay, not such character of testimony as *res gestae* means, and obviously prejudicial to the plaintiff. Moreover, it will be noted that defendant was allowed to repeat three times, over objection of plaintiff's counsel, the opinion of a man who, admittedly, was not shown to have ever seen the collision.

IV. Because his Honor erred in not granting plaintiff's motion for a new trial, on the ground that the verdict was against the law and the evidence. His Honor charged the jury that, if they found both plaintiff and defendant approached the bridge at a greater speed than allowed by law (6 miles) neither could recover, unless one was guilty of willful or wanton conduct, in which case the negligence would not be equal. Respectfully submitted that the uncontradicted evidence of Pruitt, the driver of plaintiff's car, and Sizemore and Campbell, men holding high positions with the cotton mills in Greenville, two disinterested witnesses and passengers in plaintiff's car, that they saw defendant's car approaching the bridge something like a quarter of a mile this side of it; that when close to the

bridge she swerved to the right, thereby giving the customary sign of conceding the right of way to plaintiff's driver, whereupon plaintiff's car drove on the bridge; that defendant instantly drove on the bridge and hit plaintiff's car after it had stopped, and at the further end of the bridge. Respectfully submitted that the jury disregarded this uncontradicted testimony (except the denial by the defendant), and by their verdict said the negligence was equal. Aside from the disputed conduct of the parties—that is, the denial by the defendant of her acts and conduct at the time of the collision as sworn to by three others—the jury wholly disregarded the position of the cars after the collision; the testimony on this point being undisputed. Defendant says she was fully 25 feet on the bridge when plaintiff's car came on it; that her brakes were in good order and would work. The admitted length of the bridge is 104 feet long. Defendant also says her car bounced back after it collided with plaintiff's car. Also says that from the rear of plaintiff's car to his end of the bridge, after the collision, was not over three feet; that from the rear of her car after it had collided and bounced back, was 62.4 feet. Therefore, according to defendant's own testimony, she had 79 feet in which to stop, or over six car lengths, after she saw plaintiff's car come on the bridge, while plaintiff's car stopped in one car length plus three feet. Even if the jury believed the testimony of the defendant as true, the admitted position of the cars after and before the collision, taken in connection with the statements of the defendant herself as to how far she had proceeded on the bridge when she saw plaintiff's car come on the bridge (25 feet), the inevitable conclusion was and is that the defendant, having 79 feet in which to stop, willfully and wantonly and recklessly drove on and hit plaintiff's car after the driver had stopped within a car length, plus three feet. Equally inescapable is the conclusion that plaintiff's driver had his car under control and defendant did not. And in either conclusion the

negligence would not have been equal, and, under the charge, defendant would have been liable. Respectfully submitted that it is useless to suggest that the jury concluded it was an accident, since the testimony shows that each saw the other approaching.

The evidence in this case fairly tended to show that collision between plaintiff's and defendant's automobiles occurred on a bridge too narrow for the cars to pass, at a point considerably nearer to the end from which plaintiff entered than the end from which defendant entered, and about noon, on a day when, according to some witnesses, there had been sufficient rain to render road and bridge slippery.

Plaintiff produced testimony to show that, before entering bridge, defendant had turned slightly to the right of the road and apparently indicated that she would give plaintiff right of way on the brige, and that, after he had entered, she suddenly came on and struck plaintiff's car after it had stopped. Whereas defendant's testimony tended to show that she had reached and entered bridge first, expecting plaintiff, because of such fact, to give her right of way, and that on failure to receive it she was unable, due to skidding of car on wet bridge, to stop before striking plaintiff's car. There was also testimony that witnesses who arrived just after collision declared that fault was clearly plaintiff's.

*Messrs. Jos. E. Leach* and *H. P. Burbage* for appellant.

*Messrs. Nettles & Oxner,* for respondent, cite: *Admission of speed law violation is admission of negligence:* Crim. Code 1922, Sec. 582; 104 S. C., 214. *Opinion evidence:* 102 S. C., 142; 86 S. E., 483. *Harmless error:* 107 S. C., 21; 91 S. E., 1043; 122 S. C., 347; 115 S. E., 324. *Res gestae:* 95 S. C., 307. *Silence amounting to an admission:* 79 S. C., 383; 1 Mills, Const., 296; 22 C. J., 321 and cases cited.

May 26, 1925.

The opinion of the Court was delivered by Mr. Justice Watts.

"Action for damages to plaintiff's automobile, commenced in Greenville County Court on March 12, 1923, by E. C. York against Mrs. Eileen Hunt Charles, the alleged damages growing out of a collision between a public service car owned and operated by plaintiff and a car owned by defendant; said collision having occurred on a bridge on the Augusta road, near the City of Greenville. Defendant answered and also set up a counterclaim alleging damages to her car and asking judgment against the plaintiff. The case was tried before Judge M. F. Ansel and a jury at the December term, 1923, resulting in a verdict for the defendant. Motion for new trial by plaintiff made and refused. Plaintiff appeals on various exceptions, and defendant moves to sustain judgment entered on the verdict on the grounds hereinafter set forth."

Exception IV is overruled as being too general, and for the reason there was sufficient evidence to carry the case to the jury, and his Honor committed no error.

Exception II is overruled as the testimony was not objected to. When given later, objection was made, but no ruling was made by his Honor, and no request for a ruling was made.

Exception III is overruled. It was part of *res gestae* under the authorities of *Magill v. Southern Railway,* 95 S. C., 307; 78 S. E., 1033. *Williams v. Southern Railway Co.,* 68 S. C., 369; 47 S. E., 706. *Shelton v. Southern Railway Company,* 86 S. C., 102; 67 S. E., 899; and *Charleston Livestock Co. v. Collins,* 79 S. C., 383; 60 S. E., 944.

All exceptions are overruled, and judgment affirmed.

MR. CHIEF JUSTICE GARY concurs.

MESSRS. JUSTICES COTHRAN and MARION concur in result.