**Margaret ELEK, Stephen Elek, Plaintiffs,**

**v.**

**Thomas P. BOYCE, Defendant.**

**Civ. A. Nos. 69–10, 69–11.**

United States District Court
D. South Carolina,
Charleston Division.

Heard Nov. 21, 1969.

Decided Jan. 14, 1970.

Gary D. Brown, of Brown & Brown, Ridgeland, S. C., for plaintiffs.

Joseph R. Young, of Young, Clement & Rivers, Charleston, S. C., for defendant.

HEMPHILL, District Judge.

Assigning error to court upon two grounds, plaintiffs move for a judgment non obstante veredicto or, in the alternative a new trial, as aftermath to an unfavorable verdict at the hands of a jury.

Initially, plaintiffs contend that the court erred in the exclusion from the evidence of certain statements which plaintiffs insist are admissible on a part of res gestae. The accident out of which the present litigation arose occurred on April 17, 1968, on U. S. Highway 17, on a bridge in Jasper County, South Carolina. At the time of the accident plaintiffs, Mr. and Mrs. Elek, were traveling in a southerly direction on U. S. Highway 17; defendant was traveling in a northerly direction. Plaintiffs' theory of the case is that defendant was attempting to pass another automobile (hereinafter referred to as the Pacheco automobile) while driving in a reckless manner and in so doing crossed into plaintiffs' lane of travel where, due to defendant's negligence, the accident occurred. Defendant insisted that he was proceeding in a northerly direction in his lane of travel, that when plaintiffs' automobile veered over into his lane the collision occurred.

Upon trial of the case plaintiffs attempted to introduce the following statement made by Mrs. Pacheco to Mrs. Elek (plaintiff) immediately after the accident: "Lady, lady are you hurt? I knew that man (defendant) was not going to get to his destination. He was crazy. He was going too fast." Mrs. Pacheco was a passenger in the car that had been immediately ahead of defendant's automobile and, depending upon which view of the case is taken, which he had immediately passed or was in the act of passing when the accident occurred. In either event, the Pacheco automobile was involved in the accident and Mrs. Elek testified, out of the jury's presence, that immediately thereafter, Mrs. Pacheco went over to plaintiffs' car and made the statement referred to above. The question now before the court is whether Mrs. Pacheco's statement is admissible evidence as a part of res gestae. If the answer is in the affirmative, exclusion would represent error entitling plaintiff to a new trial.

The South Carolina cases universally accord the trial court a large degree of discretion in making a determination as to whether or not a statement, which would otherwise be excluded as hearsay, should be admitted as a part of res gestae. The reason for the rule is, at least in part, that the trial judge is in a position to view all the circumstances in deciding whether the testimony sought to be introduced is of any probative value in elucidating the relevant issues. Neal v. Southern Ry. Co., 162 S.C. 288, 160 S. E. 837; Stevens v. Moore et al, 211 S.C. 498, 46 S.E.2d 73; Marks v. I. M. Pearlstine & Sons, 203 S.C. 318, 26 S.E. 2d 835 (1943); Cobb v. Southern Public Utilities Co., 181 S.C. 310, 187 S.E. 363; Lazar v. Great Atlantic & Pacific Tea Co., 197 S.C. 74, 14 S.E.2d 560; Van Boven v. F. W. Woolworth Co., 239 S.C. 519, 123 S.E.2d 862. Nevertheless the court does not wish to bottom its decision on the basis of discretion. The relevant inquiry is whether the statement would have tended to prove or disprove any facts in issue and in answering that question the court seeks guidance from the South Carolina cases on the point.

To be admissible as res gestae, a hearsay statement must be a contemporaneous, spontaneous declaration which springs out of the transaction in a manner which precludes deliberate design. "The general rule is that the declara-

tions must be substantially contemporaneous with the litigated transaction, and be the instinctive spontaneous utterances of the mind while under the active, immediate influences of the transaction; the circumstances precluding the idea that the utterances are the result of reflection or designed to make false or self-serving declarations." State v. McDaniel, 68 S.C. 304, 47 S.E. 384; see also Lowe v. Fickling, 207 S.C. 442, 36 S.E.2d 293; Marks v. I. M. Pearlstine & Sons, supra; Marshall v. Thomason, 241 S.C. 84, 127 S.E.2d 177 (1962).

■■ Here it cannot be questioned that Mrs. Pacheco's statement was both spontaneous and contemporaneous. There is an additional requirement to qualify a statement as a part of res gestae and that is that it must tend to explain the event in question or unfold the main transaction. Alternatively stated, the declarations must be relevant to the factual issue and shed light upon the truth as to what transpired. It must be borne in mind that declarations, admissible as res gestae, are hearsay. The declarant is not in court and not subject to direct or cross-examination. Thus vague or indefinite statements, or mere opinions, should be excluded. As the South Carolina Supreme Court stated the statement must be "explanatory of the main fact." Van Boven v. Woolworth Co., supra. The explanatory requirement of the declaration was explained in Bagwell v. McLellan Stores Co., 216 S.C. 207, 57 S.E.2d 257:

It must be conceded that the statement in question was sufficiently near in point of time and place to come within the res gestae rule, but another essential requirement is that 'it must possess the very characteristic of being well calculated to unfold the nature and quality of the main fact, and so harmonize with it as to obviously constitute a single transaction.' State v. Long, 186 S.C. 439, 195 S.E. 624. The declaration must explain, elucidate or in some way characterize that event. Lazar v. Great Atlantic & Pacific Tea Co. et al., 197 S.C. 74, 14 S.

E.2d 560; Marks v. I. M. Pearlstine & Sons, 203 S.C. 318, 26 S.E.2d 835. The purpose of permitting the introduction of this class of evidence is to prove facts not opinions.

Similarly, in State v. Long, 186 S.C. 439, 195 S.E. 624, is found the following pertinent language:

Statements or circumstances which are explanatory of the main fact are admissible in evidence as a part of the res gestae. Benbow v. Harvin, 92 S.C. 180, 75 S.E. 414. Its explanatory nature is essential, for a substantial coincidence in point of time with the particular fact is not sufficient to render a declaration or accompanying fact admissible as a part of the res gestae; it must possess the very characteristic of being well calculated to unfold the nature and quality of the main fact, and so harmonize with it as to obviously constitute a single transaction. Turpin v. Brannon, 3 McCord 261, 14 S.C.L. 261; Hall v. James, 3 McCord 222, 14 S.C.L. 222. Of course, the utterance in question must be spontaneous, the test being, it has been said, whether the declaration was the facts talking through the party, or the party talking about the facts. Murray v. Boston, etc., R., 72 N.H. 32, 54 A. 289, 61 L.R.A. 495, 101 Am.St. Rep. 660; Funderburk v. Powell et al., 181 S.C. 412, 187 S.E. 742.

■ The statement made by Mrs. Pacheco and sought to be introduced in the instant case was: "Lady, lady are you hurt? I knew that man was not going to get to his destination. He was crazy. He was going too fast." The first three sentences merely represent irrelevant opinion which neither tend to prove or disprove the fact in issue—which party was at fault. The factual theories upon which the parties proceeded at trial was that each was in the other's lane of travel when the accident occurred. Mrs. Pacheco's statement regarding defendant's excessive speed does not elucidate that question. The statement does not explain the transaction or shed light on how the accident occurred, it does not

place defendant's automobile in plaintiffs' lane of travel. The most that can be gleaned from the Pacheco statement is an inference that defendant was improperly operating his automobile. Absent is any causal connection between such negligent operation and the accident. Had the statement been introduced it would have indicated to the jury only an opinion on the part of the declarant that defendant was at fault. It was not a factual statement as to how the accident occurred and it is not altogether clear as to what Mrs. Pacheco intended to convey by the statement. As noted above this is a hearsay statement offered without benefit of direct or cross-examination. To admit such a vague statement could only lead the jury to speculate as to what Mrs. Pacheco meant. As stated in Funderburk v. Powell, 181 S.C. 412, 187 S.E. 742, to be admitted under the doctrine of res gestae, the declaration must have been the facts speaking through the person, rather than the person speaking about the facts. Accordingly, the court concludes the statement failed to meet the requirements for admission as a part of res gestae.

York v. Charles, 132 S.C. 230, 128 S.E. 29 (1925), involved a negligence action arising out of an automobile collision. The defendant was allowed to testify that a bystander remarked to him immediately after the accident, "It is clearly the other man's fault." The statement is quite obviously an opinion regarding fault rather than a factual statement of how the accident occurred. In the instant case the position of the automobiles was at issue; therefore, the statement concerning speed was irrelevant. An opinion on Mrs. Pacheco's part that defendant was at fault is inferable from her statement; but it falls short of the clear opinion regarding fault in York v. Charles. This court is of the opinion the elasticity of the res gestae exception to the hearsay rule was overstretched in *York*.

York v. Charles, supra, was treated in 163 A.L.R. 15, at page 189, as projecting a rule that a declaration of opinion is admissible if the other requirements of res gestae are met. The annotation explains that as a general rule the use of a spontaneous utterance "which expresses only a supposition, conclusion or opinion," regarding certain facts is inadmissible to prove those facts. The following criticism of that case follows on page 189 of the annotation:

An extreme decision, seemingly contrary to general principles, is York v. Charles (1925) 132 S.C. 230, 128 S.E. 29. The action was for property damage to an automobile sustained in a collision of cars. The defendant was permitted to testify that a man drove up while the cars were in position after the accident, walked over to her car, talked with her, and said: 'It is clearly the other man's fault.' He then offered to drive to town and get her husband. The court upheld the admission of this declaration. The decision ignored the character of it as a mere opinion, and by one who had not seen the accident, and expressly based its conclusion, without discussion upon prior decisions of the court on the res gestae principle in general. It is to be noted that in Funderburk v. Powell (1936) 181 S.C. 412, 187 S.E. 742, where this case is nevertheless cited, it was said that the test was 'whether the declaration was the facts talking through the party or the party talking about the facts.'

The words of another person seriously injured by a collision of automobiles spoken 'soon after the accident,' were held admissible in Hines v. Foster (1932) 166 Wash. 165, 6 P.2d 597, namely, 'What were you driving so fast for? We were driving nice and slow.' As against the argument that the words expressed only an opinion, the court said that the words 'clearly meant that the speed of the Foster car was fast and that the speed of the Hines car was slow'—a quite obvious conclusion. *The issue was whether the Foster car was being driven at an*

*excessive and dangerous speed.* [Emphasis added].

Subsequently, Bagwell v. McLellan Stores Co., supra, came before the South Carolina Supreme Court. *Bagwell* was a "slip and fall" case wherein the plaintiff sought to introduce the following statement of a bystander: "The floor has just been oiled and she fell." On appeal plaintiff relied upon' York v. Charles. The Supreme Court ruled that the testimony should have been excluded. In so doing the court noted that "her statement did not elucidate or characterize the main event but merely represents a conclusion on her part from what she observed either before or after the accident." Regarding the authority of York v. Charles, the court referring to the annotation in 163 A.L.R. concluded that the statement in *York* should not have been admitted on the theory of res gestae, and held that the authority of *York* was limited to its facts. The court concluded, "Certainly the holding in the *York* case should not be further enlarged so as to warrant the admission of a declaration of the character now before us." The South Carolina position now would appear to be that a statement must elucidate and explain the main event and a conclusion regarding those facts is inadmissible.

Van Boven v. Woolworth, supra, is the only South Carolina case that has come to the court's attention dealing with the res gestae problem which has been decided since Bagwell v. McLellan. In *Van Boven* the court discussed at length the requirement that the statement be explanatory of the main event in order to be admissible as a part of res gestae. Plaintiff in *Van Boven* tripped in the aisle of defendant's store over some tools which allegedly had been left there by defendant's employees. Seeking to establish negligence on the part of defendant, plaintiff testified that after the accident a salesgirl stated to her supervisor that plaintiff had fallen "outside in the flower bed where they had been working." The court distinguished the facts in *Van Boven* from those in *Bag-*

*well.* It was noted by the court that the statement offered in *Bagwell* was inadmissible because it "did not elucidate or characterize the main event but merely represented an opinion or conclusion on her (the declarant) part from what she observed either before or after the accident." The court held the statement offered in *Van Boven* admissible, distinguishing it as follows:

> The main or primary fact in this case was the fall and injury of the respondent while a customer in the store of the appellant, and the important question for determination is whether such injury was the direct and proximate result of the actionable negligence of the appellant.

> \* \* \* \* \* \*

> We think that the statement of the salesgirl was made spontaneously and was sufficiently near in point of time and place to come within the res gestae rule. Likewise, the statement was explanatory and tended to unfold the nature and quality of the main or primary fact in showing the reason for the respondent's fall. Certainly, the statement of the witness was not an opinion.

In the instant case, the statement offered did not tend to prove or disprove whether defendant was in plaintiff's lane of travel or vice versa. That was the factual question upon which the issue of liability turned. As stated by plaintiffs' counsel in his brief, filed November 12, 1969, the statement "would tend to show that defendant \* \* \* was driving at a high and reckless rate of speed, and was at fault." Unlike the statement offered in *Van Boven*, Mrs. Pacheco's statement did not tend to elucidate or explain the main or primary fact in the case which was whether defendant was in plaintiffs' lane of travel at the time of the collision.

Counsel for the plaintiffs also assert the court erred in excluding certain testimony which they sought to elicit from the two highway patrolmen who appeared at the trial. Two highway patrolmen arrived at the scene shortly aft-

er the accident occurred and conducted an investigation. Upon direct examination the court permitted those patrolmen to testify as to the locations of the cars after the accident, the positions of three sets of skid marks and the location of the debris which they observed. A diagram was placed on a "blackboard" in the courtroom which also showed the results of their investigation. The diagram represented a road with the locations of the automobiles as they were found by the patrolmen, the three sets of skid marks and the debris. The court excluded testimony that the skid marks and debris were fresh. Moreover, as the skid marks did not lead up to the vehicles involved in the accident, the court excluded testimony as to which marks were made by the respective vehicles. It is urged that the court thereby erred.

The South Carolina position on the extent to which a highway patrolman may be permitted to testify was clearly and concisely stated in Willard v. McCoy, 234 S.C. 317, 108 S.E.2d 113 (1959) wherein the court said "* * * We have heretofore remarked, in at least one opinion, that the testimony of highway patrolmen should be limited, when they are not eyewitnesses, to markings on the highway, etc., and it is for the jury to reach a conclusion concerning the issue which it is sought to be proven or rebutted thereby." [1]

The court cited Huggins v. Broom, 189 S.C. 15, 199 S.E. 903 (1938) as further authority for its statement of the law. That case involved a witness, an expert photographer, who had photographed accidents for some ten years. The witness photographed the scene of the accident out of which the case arose and appeared at the trial. Error was alleged due to the exclusion of certain testimony by this witness. The Supreme Court stated the matter as follows:

Respondents state the question thusly: "Was it error for the trial Judge to exclude the opinion of photographer Willis as to which automobile made the skid marks shown in a photograph of the scene of the accident and his conclusions as to the manner in which such skid marks were made?"

As best we can gather from the record, the trial judge had permitted full testimony as to physical conditions apparent at the scene of the wreck, and of the automobiles involved in the collision. He had permitted the witness Willis to 'interpret' the photographs he had taken of the physical facts surrounding the collision, that is, the witness was permitted to point out on his photographs the markings shown on the highway at the place of the collision and describe these markings, but the trial judge excluded the opinion and conclusion of the witness as to how the markings were made and/or what made them—the manner in which such marks were made.

The court, reasoning as follows, concluded the witness' expertise as a wreck photographer did not qualify him to render opinions regarding the physical evidence:

The only showing made to qualify this witness as an expert, one qualified to express an opinion from what was shown by the physical facts as photographed, was that he had been taking pictures or photographing wreck scenes for ten years. He was and is, no doubt, an expert photographer, but was in no better position to express an opinion on the manner in which a marking was made than any other average citizen. It would be just as consistent to say that a highway patrolman who visits the scenes of wrecks with great frequency, could, after testifying to the physical facts appearing as observed by him, then give his opinion as to which car made certain markings, and whose negligence caused the wreck.

1. Quoting Thompson v. South Carolina Highway Department, 224 S.C. 338, 79 S.E.2d 160 (1953).

This is the class of matter of which every person of the ordinary fortunes of life would be just as competent to hold and express an opinion as one who photographs a large number of wreck scenes. Expert or opinion evidence is permissible, and quite often necessary, but on matters for which all the materials for judgment are already before the jury, and no special skill or experience is necessary in order to reach a conclusion, and more than one reasonable inference may be indulged in, and especially where the witness is not shown to have had any training or experience different from

Mr. Average Citizen, then opinion evidence is properly excluded as superfluity, if for no other reason.

A similar result was reached in the case of Smith v. Hardy, 228 S.C. 112, 88 S. E.2d 865 (1955). The South Carolina position opinion evidence regarding the physical evidence of a wreck is in accord with the well recognized general rule that the "opinion of a witness is not admissible where all the facts are capable of being clearly detailed so that the jury may form the correct conclusion therefrom." Green v. Sparks, 232 S.C. 414, 102 S.E.2d 435 (1958); McCown v. Muldrow, 91 S.C. 523, 74 S.E. 386 (1912).

■ Accordingly this court believes that the patrolmen could properly testify about the location and physical characteristics of the debris and skid marks and the position of the vehicles. In the words of Huggins v. Broom, supra, they could "point out" and describe the markings. From the location of the skid marks and the position of the vehicles the jury could deduce which skid marks had been made by the respective vehicles; the patrolman was in no better position than a layman to draw such a conclusion from the evidence. Evidence regarding the blackness of the skid marks, the weight of the cars, the condition of the tires, the speed at which the vehicles were travelling, et cetera, would enable the jury to determine whether or not they were fresh, likewise testimony about the physical characteristics of the debris would afford the jury an opportunity to determine its freshness. In neither area would a patrolman's opinion be necessary or proper. In summary it was within the realm of the jury to determine from the physical descriptions whether the marks and debris were fresh and which marks were made by the respective vehicles; any opinion given by the patrolmen regarding these matters would invade the province of the jury.

■ Plaintiffs rely upon Doremus v. Atlantic Coast Line Railroad Co., 242 S. C. 123, 130 S.E. 370 (1963) as authority for their position that the excluded testimony should have been admitted. In that case a patrolman who had conducted a number of tests and done a great deal of experimenting on the subject was allowed to testify about the relation between the length of skid marks and the speed of an automobile. In Doremus the patrolman was qualified as an expert in an area which jury would be unable to reach a precise conclusion unaided by his expertise. Here, even assuming that the patrolman was an expert in the field, still such an opinion ws inadmissible because a layman, given the facts, would also be able to reach a conclusion unaided by opinion. This court is unwilling to extend Doremus in derogation of the well established principles of evidence without first having guidance in that direction by the South Carolina Supreme Court.

■■ In reaching its conclusion the court is guided by the sound judicial philosophy adopted by the South Carolina Supreme Court in Smith v. Hardy where it said: "So frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except where they appear to be so clear and irrefutable that no room is left for the entertain-

ment, by reasonable minds, of any other."[2] Although the court may disagree with the jury's assessment of the facts from the testimony and physical evidence, it cannot be said that their conclusion was one that reasonable minds could not have reached. Thus the court should not disturb the jury's determination under the guise of technical error thereby establishing precedent contrary to the established rules of evidence.

Plaintiffs' motion for judgment non obstante veredicto, or in the alternative for a new trial, is denied. The Clerk will enter judgment accordingly.

And it is so ordered.

2. Quoting from 20 Am.Jur.; Evidence, Section 1183.